GRANT *v.* GRANT.

DIVORCE—EXTREME CRUELTY—EVIDENCE—SUFFICIENCY.

The decree of the lower court dismissing a husband's bill for divorce on the ground of extreme cruelty is justified by the record.[1]

Appeal from Calhoun; North (Walter H.), J. Submitted January 8, 1925. (Docket No. 50.) Decided April 3, 1925.

Bill by Guy Howard Grant against Grace E. Grant for a divorce. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*J. M. Hatch,* for plaintiff.

*James W. Mackey,* for defendant.

WIEST, J. This is a suit for divorce, prosecuted by the husband on the charge of extreme cruelty. Defendant denies the charge, but asks for no affirmative relief. Proofs were taken in open court, and the circuit judge dismissed the bill. Plaintiff is here by appeal.

The parties were married in 1902, and have two daughters, 18 and 9 years of age. Plaintiff claims defendant continually nagged him and charged him with undue familiarity with other women until he lost all affection for her and finally left. Plaintiff entered military service September 1, 1917, contracted pulmonary tuberculosis, was under medical observation and treatment in military hospitals for some time, and the disease having been arrested he was discharged in December, 1920. Since May, 1919, when he was

[1] Divorce, 19 C. J. § 367.

home from the service for a few days, he has had no commerce with defendant, and claims this was on account of her nagging and also because he understood it would not be conducive to his physical welfare to do so with tuberculosis in the background.    He claims the nagging has run all through the period of their married life, and was not a new thing when he returned home from the service.    Absence may make the heart grow fonder, but if plaintiff was henpecked for about 17 years we cannot understand why he was so forgetful of such misery when he wrote letters to defendant in 1918 and 1919.    We will quote from but two:

"Fort Benjamin Harrison, Indiana.
"March 20th, 1918.
"My Dearest Grace:
"Do not be afraid to tell me your troubles for I want to share them.    *   *   *   I cannot see how you can think of standing the loving you will get from me if you come here, am giving you fair warning that what time I can have with you is going to be spent a good share of it in just loving you to death.    Do you think you can stand it alright and not regret it if you are not sure it might not be best for you to come for I too can hardly stand it not to be near you."

"Denver, Colo.,
"April 15th, 1919.
"My Dearest Grace:
"*   *   *   Have not received approval from the Commanding Officer on my leave yet but hope to get it any day now then 'grand and glorious feeling' like you read about in the funny sheets of the newspaper. Am coming back like Barnum's Circus bigger and better than ever   *   *   *   at least I know of one member of the Grant family who looks forward to joy of this trip or rather the ending of it   *   *   *   with all love."

The letters do not square with what he now claims. In May, 1919, having a 30-day leave of absence from the service, he drove an automobile from Denver to

his home in Marshall, and when he got home defendant found a telegram in his pocket extending "Congratulations and best wishes, Margaret." This telegram was explained by plaintiff as follows: Margaret and some others at the hospital in Denver guessed that he would not be able to make the trip to his home in the old car he had, so when he reached Omaha he telegraphed them he had got that far and received the telegram his wife found in his pocket. The explanation was certainly innocent enough, but innocence is not always accepted as pleaded and evidently the incident did not become a closed one. Plaintiff was a rural mail carrier, and a woman on his route sent him a knit sweater by mail and, of course, the thing had to fall into the hands of defendant and she sent it back. Plaintiff says he was to buy the sweater if it proved a fit. If he knew the sweater was coming, it would have been good judgment on his part to have forewarned defendant. While these incidents are made much of in the testimony, and probably were the subjects of recurrent accusations, we cannot treat them with any great degree of solemnity for they are too trivial to have caused much hurt to plaintiff.

After his discharge from military service in December, 1920, plaintiff took his dinners with his wife for a time, but stayed at his mother's nights, and finally quit visiting his home and remained at his mother's. Defendant baked a layer cake and took it to plaintiff, but even this sweet offering was not effective beyond obtaining the concession that he would call and talk matters over. He did call and informed defendant he would never live with her, and intimates that she thereupon shammed a faint to annoy him.

Plaintiff gives as an item of defendant's nagging her desire for furniture, but we are not informed of what she wanted or needed and therefore cannot say whether it was really nagging or justified requests for household needs. If she is correct in saying that for 23

years the only *furniture* he purchased was a gun cabinet, we think it was far from extreme cruelty on her part to tell him more than once that she wanted furniture and pointedly insist that a gun cabinet did not sufficiently meet the furniture needs of the home. He says she nagged him to get an automobile for her use, and she states she only suggested that she would like to drive his automobile when he was not engaged on the mail route.

He tried to get defendant to apply for a divorce and promised, if she would do so, to support her and the children as long as he lived, but she spurned the request and offer, begged him to return home for the sake of their children, and declared her affection. We are persuaded he wants to get rid of his wife and be free. This freedom, however, is not so easy of attainment as he evidently imagines. This desire for freedom from the yoke of marriage when it besets a man has a tendency to make him worrisome. It is claimed defendant said that when she got through with plaintiff "nobody would want him." If this was said, it was but a silly statement, aroused by his insistence for divorce. Plaintiff says he does not want a divorce for the purpose of marrying again, so it is of no importance whether some woman would want him or not.

Plaintiff has made no case for divorce, and the decree in the circuit dismissing the bill is affirmed, with costs to defendant.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred.